UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LEAWANNA RANKIN, individually and on behalf of T.R., a minor, </br></br>Plaintiffs, </br></br>v. </br></br>TERRY STIGDON, *et. al.*, </br></br>Defendants. | ) ) ) ) ) ) ) No. 2:19 CV 499 ) ) ) ) ) |

### OPINION and ORDER

This matter is before the court on defendants' motion for summary judgment. (DE # 59.) For the reasons that follow, defendants' motion is granted in part and denied in part.

**I.   BACKGROUND**[1]

Plaintiff Leawanna Rankin adopted plaintiff T.R. in December 2014 when T.R. was 11 years old, after T.R.'s biological parents' rights were terminated. (DE # 60-1 at 19, 31, 35.)  Enashea Rankin is T.R.'s biological mother. (*Id.* at 28.) Tamara Rankin is T.R.'s biological grandmother. (*Id.* at 24.)

In October 2017, the Vanderburgh Superior Court Juvenile Division determined that T.R. was "beyond the control of her parent" and that there "does not exist any viable options for the care and treatment of said child in the community." (DE # 60-8 at 2.) The Court awarded wardship of T.R. to the Indiana Department of Correction

---

[1] The following facts are undisputed for purposes of defendants' motion, unless otherwise noted.

(IDOC) for housing in any correctional facility for children or any community-based correctional facility for children. (*Id.*) The Court's order included a transportation order stating that Vanderburgh County would transport T.R. to the Madison Juvenile Correctional Facility. (*Id.*)

T.R. spent some time at the Madison Juvenile Correctional Facility before being transferred to the LaPorte Juvenile Correctional Facility (LPJCF). (DE # 60-1 at 55-56.) An intake form completed by the Madison facility and sent to the LPJCF stated that T.R. was not to have contact with Enashea or Tamara. (DE # 67-1; 60-3 at 23.) However, there was not a no-contact order for Tamara. (DE # 60-3 at 24.)

A few days after T.R. arrived at LPJCF, defendant Shelby Milner became T.R.'s counselor. (DE # 60-2 at 48.) As part of her job, Milner met with residents of the facility (referred to as students), and coordinated at least one phone call each week for the student. (*Id.* at 16.) Each student would supply a list of people that she wanted to contact over the phone and the administration would approve or deny those contacts. (*Id.* at 21.) The student would be precluded from calling a person whose name was not on her telephone list. (*Id.* at 22.) T.R.'s phone list only listed Leawanna. (*Id.*)

In addition to making phone calls from their living units, students also had access to phones in their counselor's office, or access to a phone if someone in the administration allowed a phone call from his or her office. (DE # 60-2 at 22, 52.) Typically, when making calls from a counselor or administrator's office, students would not be permitted to contact someone who was not on their telephone list. (*Id.* at 22.)

2

However, T.R. was in regular contact with Tamara, who was not on T.R.'s phone list. (DE # 59-4 at 2.)

Defendants assert that, in her role as T.R.'s counselor, Milner made phone calls to a person she believed was Leawanna, but after T.R. was released, Milner learned that she had been speaking with Enashea. (DE # 60-2 at 53.) During one of these phone calls, Milner believed that Leawanna was giving the LPJCF permission to place T.R. with Tamara upon T.R.'s release from the LPJCF. (DE # 60-2 at 65; DE # 60-3 at 17.) Based on this belief of permission, the Administrative Review Committee for the LPJCF (including defendants Laura Gorbonosenko and Karl Pruett) determined that T.R. would be released to Tamara. (DE # 60-3 at 19, 28, 29; DE # 60-4 at 19-20; DE # 59-5.)

Plaintiffs dispute that Milner believed she was speaking to Leawanna, arguing that the evidence establishes that the telephone list was meant to be an exclusive list of allowable contacts for students, and Leawanna was the only contact approved on T.R.'s list. (DE # 69 at 8.) Plaintiffs also point to evidence that the counselors were to dial the phone numbers when students made calls from their offices. (DE # 60-3 at 26.)

T.R. was released to Tamara without Leawanna's knowledge or consent. (DE # 60-1 at 70.) This suit followed.

In their amended complaint, plaintiffs name as defendants: Indiana Department of Child Services ("IDCS") director Terry Stigdon (in his official capacity); IDCS regional manager Reba James (in her official capacity); IDOC commissioner Robert E. Carter Jr. (in his official capacity); LPJCF custody supervisor Karl Pruett (in his

3

individual capacity); LPJCF counselor Shelby Milner (in her individual capacity); LPJCF program director Laura Gorbonosenko (in her individual capacity); LPJCF custody officer Shannon Peckat (in her individual capacity); and LPJCF warden John Galipeau (in his official and individual capacities). (DE # 22 at 1.)

Plaintiffs' amended complaint alleges three counts against defendants: a state law negligence claim, and claims pursuant to 42 U.S.C. § 1983 for unlawful seizure and obstruction of the family unit. (*Id.*)

Before the court is defendants' motion for summary judgment on all of plaintiffs' claims. (DE # 59.) In their response to defendants' motion for summary judgment, plaintiffs voluntarily relinquish their claims against defendants Stigdon, James, and Peckat. (DE # 68 at 1.) Accordingly, judgment is summarily granted in favor of these defendants. Defendants' motion is fully briefed and is ripe for ruling.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone,

4

but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

**III. DISCUSSION**

    *A.    Eleventh Amendment Immunity*

Defendants argue that summary judgment should be granted in favor of Carter on plaintiffs' § 1983 claims because Carter was sued in his official capacity only, as IDOC commissioner, and the Eleventh Amendment bars any claim for damages against a state official sued in his official capacity. (DE # 63 at 4-5.) Defendants further argue that the § 1983 official capacity claims against Galipeau must fail for the same reason. (*Id.* at 5.)

5

"A cause of action under § 1983 requires a showing that the plaintiff was deprived of a right secured by the Constitution or federal law, by a *person* acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006) (emphasis added); 42 U.S.C. § 1983. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). The Supreme Court has determined that "a State is not a person within the meaning of § 1983" in a suit for monetary damages. *Id.* at 64; *see also Duncan v. State of Wis. Dep't of Health & Family Servs.*, 166 F.3d 930, 935 (7th Cir. 1999) ("[N]either the state agency itself nor the state employees in their official capacity can be sued for retrospective monetary relief, for the simple reason that the state is not a 'person' for purposes of 42 U.S.C. § 1983.")

"The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will*, 491 U.S. at 66 (cleaned up). Indiana has not consented to this suit. *See e.g. Moore v. State of Ind.*, 999 F.2d 1125, 1129 (7th Cir. 1993); *Platt v. Indiana*, No. 117CV01276LJMDML, 2017 WL 3621298, at *2 (S.D. Ind. Aug. 23, 2017). Additionally, "[t]he Supreme Court has expressly held that Congress has not abrogated the states' immunity in § 1983 suits." *Joseph v. Bd. of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748 (7th Cir. 2005) (citing *Quern v. Jordan*, 440 U.S. 332, 341–45 (1979)). Thus, because plaintiffs sued Carter in his official capacity for

monetary damages, the Eleventh Amendment bars plaintiffs' federal claims against him and he is entitled to summary judgment in his favor.

Defendants have not, however, established that Galipeau is likewise entitled to Eleventh Amendment immunity. Only states, state officials, state agencies, and other entities operating as an arm of the state are entitled to such immunity. "The Eleventh Amendment does not apply to suits against counties or other local government entities." *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001).

"To determine if a particular entity is an arm of the state, courts look primarily at two factors: (1) the extent of the entity's financial autonomy from the state; and (2) the 'general legal status' of the entity." *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008) (citation omitted). Here, Galipeau was warden at the LPJCF. Defendants do not address whether the LPJCF is a state or local entity. Accordingly, the court cannot grant Galipeau judgment as a matter of law at this time based on Eleventh Amendment immunity. *See also Wilburn v. St. Joseph Cnty. Juv. Just. Ctr.*, 353 F. Supp. 3d 736, 741 (N.D. Ind. 2018) (holding that employees of juvenile facility were county, rather than state, employees, and not entitled to Eleventh Amendment immunity).

In response to defendants' Eleventh Amendment immunity argument, plaintiffs cite *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Plaintiffs argue that *Hafer* stands for the proposition that individuals can be sued in their official capacity if a policy or custom of the entity they represent was the cause of a violation of a federal right. (DE # 68 at 3.) Yet, plaintiffs merely cite the portion of the Court's opinion that explains *how* an official

7

capacity claim operates. The question in *Hafer* was whether a state official sued in her *individual* capacity, for actions taken as a state official, is immune from a suit for damages under § 1983 in the same manner as a state official sued in their official capacity. The Court answered that question in the negative. *Id.* at 31. The Court did not alter its holding in *Will* that "[n]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 26 (quoting *Will*, 491 U.S. at 71).

Defendants next argue that the Eleventh Amendment also bars plaintiffs' state law claim against Carter and Galipeau (in his official capacity). Plaintiffs did not respond to this argument, and have therefore waived any argument they may have had in response. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

Defendants are correct that the Eleventh Amendment prevents this court from adjudicating state law claims against state officials sued in their official capacities. *See Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)). Accordingly, Carter is entitled to summary judgment on the state law claim against him. However, for the reasons discussed above, it is not clear whether Galipeau is a state or county official, and therefore, defendants' motion for summary judgment on the state law claim against Galipeau, based on Eleventh Amendment immunity, is denied.

B.  *Fourth Amendment Claim*

Defendants also move for summary judgment on T.R.'s Fourth Amendment claim. Plaintiffs' amended complaint alleges that, by "retaining control and custody of T.R., without the proper consent and knowledge of her adopted mother[,] the Defendants improperly seized T.R." (DE # 22 at 6.) Plaintiffs also argue that defendants violated the Fourth Amendment by releasing T.R. to an individual other than her legal guardian. (DE # 68 at 4-5.)

The seizure of a child from her family is reasonable for purposes of the Fourth Amendment if it is "pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers 'have reason to believe that life or limb is in immediate jeopardy." *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011) (cleaned up).

Plaintiffs' first claim, that defendants took possession of T.R. and restrained her freedom, does not establish a Fourth Amendment claim. T.R. was in the custody of the IDOC pursuant to the October 2017 order of the Vanderburgh Superior Court. (DE # 60-8.) The Court's order explicitly awarded wardship of T.R. to the IDOC for housing in any correctional facility for children or any community-based correctional facility for children. (*Id.* at 2.) Thus, defendants' custody of T.R. did not violate the Fourth Amendment.

Plaintiffs' remaining argument is that defendants violated the Fourth Amendment by transporting and releasing T.R. to someone other than her legal

9

guardian. To begin, it is not clear that the Fourth Amendment governs the transportation or release of a minor after that minor's court-ordered placement in IDOC custody. Typically, the Fourth Amendment applies to pre-trial detention. *See e.g. Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 368 (2017). However, the constitutional provisions applicable to juveniles involuntarily detained in a juvenile institution may differ from those of convicted criminals. *See e.g. Reed v. Palmer*, 906 F.3d 540, 549–50 (7th Cir. 2018) ("Supreme Court precedent is not clear about whether state juvenile detention facility conditions should be judged under the Eighth Amendment's Cruel and Unusual Punishment Clause or the Fourteenth Amendment's Due Process Clause."); *Apkarian v. McAllister*, No. 17-CV-309-JDP, 2019 WL 4256826, at *3 (W.D. Wis. Sept. 9, 2019). Neither party addressed this issue.

However, even assuming that the Fourth Amendment does apply, there was no violation when T.R. was released to someone other than her legal guardian, as her release was not a "seizure" for purposes of the Fourth Amendment. "The threshold consideration in a Fourth Amendment inquiry is whether the governmental conduct in question constitutes a search or seizure within the meaning of the amendment's text." *Doe v. Heck*, 327 F.3d 492, 509 (7th Cir. 2003), *as amended on denial of reh'g* (May 15, 2003). "A person has been 'seized' within the meaning of the Fourth Amendment if, in view of all of the circumstances surrounding the incident, a reasonable person would not have believed that he was free to leave." *Id.* at 510. The defendants involved in the transfer did not seize T.R. – they released her from state custody. Once she was released to

10

Tamara and was no longer in state custody, there could be no ongoing governmental seizure. Plaintiffs do not cite any case law for their proposed theory that a release from state custody could constitute a seizure for purposes of the Fourth Amendment. Defendants are entitled to summary judgment on plaintiffs' Fourth Amendment claim.

    C.    *Due Process Claim*

Defendants next argue that they are entitled to summary judgment on Leawanna's due process claim. Plaintiffs' amended complaint alleges that, "[b]y releasing and transporting T.R. to an individual who did not have legal rights to her, the Defendants violated the civil rights of Leawanna Rankin and Leawanna Rankin's family." (DE # 22 at 6.) Defendants contend that this claim fails because there is no evidence that there was coercive interference with Leawanna's familial relations. (DE # 63 at 8.)

"The Supreme Court has held that the Fourteenth Amendment's Due Process Clause shields certain aspects of the parent–child relationship from state interference. This component of substantive due process—sometimes called the right to 'familial integrity,' or 'familial relations,' —includes a parent's interest in the 'care, custody, and management' of his children." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 821 (7th Cir. 2022) (internal citations omitted).

Substantive due process rights do not apply to state actions that were not purposely directed at the parent-child relationship. "The Supreme Court has recognized violations of the due process liberty interest in the parent-child relationship only where

11

the state took action specifically aimed at interfering with that relationship." *Russ v. Watts*, 414 F.3d 783, 788 (7th Cir. 2005); *see also Thompson v. City of Chicago*, 472 F.3d 444, 452, n.25 (7th Cir. 2006) (noting that plaintiffs' familial relations due process claim was properly dismissed because no allegation that defendants killed decedent for specific purpose of terminating his relationship with his family). "[F]inding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court." *Russ*, 414 F.3d at 790. "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis in original).

Yet here, there exists material questions of fact as to the inadvertent-ness of defendants' placement of T.R. with Tamara, precluding entry of summary judgment on plaintiffs' substantive due process claim. While defendants point to Milner's testimony that she was duped by Enashea into believing that Leawanna granted permission to release T.R. to Tamara, plaintiffs have created a genuine question of material fact by pointing to evidence that the contact sheet was meant to be the exclusive list of allowable contacts for students, and that counselors would typically dial the phone numbers for calls made from their offices. Moreover, a LPJCF document states that T.R. maintained consistent contact with her "mom" during her residency at LPJCF. (DE # 59-4 at 2.) Yet, the facility's call log does not show calls to or from Leawanna's phone number. (DE # 59-1; DE # 59-2.) Taking this evidence in the light most favorable to

12

plaintiffs, there remains a question of fact as to whether defendants believed that Leawanna had granted permission for T.R.'s release to Tamara. Accordingly, defendants' motion for summary judgment on plaintiffs' familial relations claim is denied.

### D. Qualified Immunity

Defendants argue that, in the event this court determines that there are questions of fact as to any of plaintiffs' federal claims, defendants Milner, Pruett, Gorbonosenko, and Galipeau are nevertheless entitled to summary judgment on the basis of qualified immunity. (DE # 63 at 9.) "The doctrine of qualified immunity protects government officials from liability for civil damages in situations in which their conduct does not violate a clearly established statutory or constitutional right." *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The Supreme Court holds that if no constitutional right was violated, there is no necessity for further inquiries. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

If a violation could be made, the next step is to ask whether the right was clearly established; this inquiry must be undertaken in light of the particular circumstances of the case. *Id.* "A constitutional right is 'clearly established' for qualified-immunity purposes where [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Abbott v. Sangamon County, Ill.,* 705 F.3d 706, 731 (7th Cir. 2013). "A case holding that the exact action in

13

question is unlawful is not necessary." *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016). In order to be "clearly established, there need not be a case directly on point but existing precedent must make the question beyond debate. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (cleaned up).

Here, the evaluation of qualified immunity on plaintiffs' familial relations claim (the only remaining federal claim) requires assessment of the same material facts in dispute on the substantive claim. In light of these disputes, the question of qualified immunity cannot be determined at this time.

E. *Negligence Claim*

Defendants' final argument is that the Indiana Tort Claims Act (ITCA) affords the LPJCF defendants (the remaining defendants) immunity against plaintiffs' negligence claim. Plaintiffs did not respond to this portion of defendants' motion for summary judgment, and have therefore waived any argument they may have had in response. *See Nichols*, 755 F.3d at 600.

"The ITCA, Indiana Code section 34–13–3–1 *et seq.*, governs lawsuits against political subdivisions and their employees. Among other things the statute provides substantial immunity for conduct within the scope of the employee's employment." *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003). The ITCA states, in relevant part, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind.

14

Code § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."); *Julian v. Hanna*, 732 F.3d 842, 848 (7th Cir. 2013) (same). "The Indiana Supreme Court interprets 'scope of employment' to include any conduct of the same general nature as that authorized by the public employer, conduct incidental to the conduct authorized by the employer, and conduct done to an appreciable extent to further the employer's business." *Katz-Crank v. Haskett*, 843 F.3d 641, 650–51 (7th Cir. 2016) (cleaned up).

Here, plaintiffs' negligence claim stems from defendants' involvement in T.R.'s release from the LPJCF, involvement that was undisputedly within the scope of their employment at LPJCF. Accordingly, plaintiffs' negligence claim against defendants Galipeau (in his individual capacity), Pruett, Milner, and Gorbonosenko is barred by the ITCA, and defendants' motion for summary judgment as to that claim is granted. However, as this court noted in an earlier section, plaintiffs' negligence claim made against Galipeau in his official capacity remains pending.

## IV.    CONCLUSION

For these reasons, defendants' motion for summary judgment (DE # 59) is **GRANTED in part and DENIED in part**, on terms consistent with this Opinion and Order. The court **GRANTS** summary judgment in favor of defendants Terry Stigdon, Reba James, and Shannon Peckat, but **RESERVES** entry of final judgment against these defendants until the resolution of the remaining claims in this case. The court **REFERS**

this case to Magistrate Judge Andrew P. Rodovich for settlement proceedings; should those proceedings be fruitless, a trial date and pretrial filing deadlines will be set under separate order.

**SO ORDERED.**

Date: March 9, 2023

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT